IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHAWNTAE LAQUETTA )
FORD, )
 )
      Plaintiff, )
 )    Case No. 2:18-cv-1026-GMB
vs. )
 )
NANCY A. BERRYHILL, )
Acting Commissioner of Social )
Security, )
 )
      Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Shawntae Laquetta Ford appeals from the decision of the
Commissioner of the Social Security Administration (the "Commissioner") denying
her application for disability insurance benefits ("DIB") and Supplemental Security
Income benefits ("SSI"). Ford timely pursued and exhausted her administrative
remedies, and the decision of the Commissioner is ripe for review pursuant to 42
U.S.C. §§ 405(g) and 1383(c)(3). The parties have consented to the full dispositive
jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 626(c).
Doc. 11.

Ford was 36 years old at the time of the decision of the Administrative Law
Judge ("ALJ"), and she has at least a high school education. Tr. at 23 & 95. Her

past work experiences include employment as an appointment clerk, account clerk, and loan clerk. Tr. at 22 & 67–70. Ford initially claimed that she became disabled in 2005, but at the hearing before the ALJ she amended her onset date to March 31, 2015. She asserts that she became unable to work because of chronic sinusitis, migraine headaches, and chronic severe pain. Doc. 8 at 4; Tr. at 18.

When evaluating the disability of individuals over the age of 18, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 & 416.920; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i). If she is, the claimant is not disabled, and the evaluation ends. *Id*. If she is not, the Commissioner next considers the effect of all of the claimant's physical and mental impairments in combination. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal

the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20

C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the claimant's impairments

fall within this category, she will be found disabled without further consideration.

*Id.* If they do not, a determination of the claimant's residual functional capacity

("RFC") will be made, and the analysis proceeds to the fourth step. 20 C.F.R. §§

404.1520(e) & 416.920(e). Residual functional capacity is an assessment, based on

all relevant evidence, of a claimant's remaining ability to work despite her

impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's

impairments prevent her from returning to past relevant work. 20 C.F.R. §§

404.1520(a)(4)(iv) & 416.920(a)(4)(iv). If the claimant still can do her past

relevant work, she is not disabled, and the evaluation ends. *Id.* If the claimant

cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step

five requires the court to consider the claimant's RFC, age, education, and past work

experience to determine whether she can do other work. 20 C.F.R. §§

404.1520(a)(4)(v) & 416.920(a)(4)(v). If the claimant can do other work, the

claimant is not disabled. *Id.* The Commissioner bears the burden of demonstrating

that other jobs exist that the claimant can perform, and once that burden is met the

claimant must prove her inability to perform those jobs in order to be found to be

disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ford has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of the ALJ's decision. Tr. at 17 & 24. The ALJ first determined that Ford meets the insured status requirements of the Social Security Act through December 31, 2020. Tr. at 18. She next found that Ford has not engaged in substantial gainful activity since March 31, 2015, the amended alleged onset date. Tr. at 18. According to the ALJ, Ford's sinusitis and migraines are "severe" as defined by the requirements set forth in the regulations. Tr. at 18–19. She further determined that Ford had non-severe impairments of: a history of herpes, gastro esophageal reflux disease ("GERD"), obesity, status post fixation of broken finger left hand, and status post herpes simplex virus meningitis. Tr. at 19. Finally, the ALJ found that the thyroid dysfunction and affective disorder claimed by Ford were not medically determinable impairments because there was a lack of objective medical evidence to support the existence of the impairments. Tr. at 19.

The ALJ found that Ford does not have an impairment or a combination of impairments that either meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 19–20. The ALJ determined that Ford's statements concerning the intensity, persistence, and limiting effects of her

symptoms were "not entirely consistent with the medical evidence or other evidence in the record." Tr. at 22.

The ALJ determined that Ford has the RFC to perform medium work "except that she can frequently climb ramps and stairs; she should never climb ladders, ropes, or scaffolds; she can have occasional exposure to extremes of heat and cold, humidity, and atmospheric conditions (i.e. dusts, odors, fumes, pulmonary irritants); [and] she should have no exposure to hazards such as unprotected heights and dangerous machinery." Tr. at 20.

At the fourth step of the analysis, the ALJ concluded that Ford is able to perform her past relevant work as an appointment clerk, account clerk, and loan clerk in the way those jobs generally are performed. Tr. at 22. The ALJ considered the testimony of a vocational expert ("VE"), and alternatively determined that, considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform, such as sandwich maker, hand packager, and grocery bagger. Tr. at 23. The ALJ concluded her findings by stating that the plaintiff is not disabled under Section 1520(f) of the Social Security Act. Tr. at 24.

## I. STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is

a narrow one. The scope of review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 & 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439–40 (11th Cir. 1997)). The court approaches the factual findings of the Commissioner with some measure of deference but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court should not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. F. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is

supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [of review] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## II. DISCUSSION

Ford alleges that the ALJ's decision should be reversed and remanded because (1) the ALJ improperly disregarded the opinion of Ford's treating physician, Dr. Bradford Woodworth; and (2) the ALJ improperly evaluated the plaintiff's complaints of pain under the Eleventh Circuit's pain standard. Doc. 8. The Commissioner responds that any failure to discuss the opinion evidence of Dr. Woodworth was harmless error because the ALJ found that the plaintiff could perform her past relevant work. [1] The Commissioner further asserts that the evaluation of the plaintiff's subjective complaints of pain was proper. Doc. 9.

## A. Weight Assigned to the Treating Physician's Opinion

Medical opinions relevant to a Social Security claim are defined as

---

[1] The Commissioner argues that Ford was found to be able to perform her past relevant work as a loan clerk as accommodated with an enclosed office and air purifier. However, the VE merely opined that she was able to perform all of her past relevant work.

"statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what the [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1) & 416.927(a)(1). Under Eleventh Circuit law, the opinion, diagnosis, and medical evidence of the plaintiff's treating physician should be accorded substantial or considerable weight unless "good cause" is shown for not doing so. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527 & 416.927(d).[2] "Good cause" exists for an ALJ

---

[2] The regulation set forth in 20 C.F.R. § 404.1527(c) notes that a treating doctor's opinion on "nature and severity" will be given "controlling weight" where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other medical evidence, and that the longer the treatment relationship has existed, the more weight the opinion

not to give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) . . . was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583–84 (11th Cir. 1991) (holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record).

Opinions such as whether a claimant is disabled, the assignment of the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner," and on these issues the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The court instead looks to the "doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of [that] condition." *Lewis*, 125 F.3d at 1440; *see also* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").  Such statements by a physician are relevant to the ALJ's

---

is entitled to receive.

findings, but they are not determinative because it is the ALJ who bears the responsibility of assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c). It follows that the opinions of reviewing, non-examining physicians, when contrary to those of examining physicians, generally are entitled to little weight. *Lamb v. Bowen*, 847 F.2d 698 (11th Cir. 1988); *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987).

The ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). When the ALJ fails to "state with at least some measure of clarity the grounds for his decision," the district court must decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam). Without clarification of the ALJ's process of weighing the opinion, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Winschel*, 631 F.3d at 1179 (11th Cir. 2011) (quoting *Cowart*, 662 F.2d at 735). The ALJ may ignore the

opinion of the treating physician regarding disability only if the opinion is so brief and conclusory that it lacks persuasive weight or is unsupported by any clinical or laboratory findings. *Wheeler v. Heckler*, 784 F.2d 1073 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

In this case, Dr. Woodworth at the Kirklin Clinic's Otolaryngology Department treated the plaintiff twice for her chronic sinusitis before her alleged onset date of March 31, 2015. Her fist visit was in June 2011, when his impression of the plaintiff was that she had chronic sinusitis with likely allergic fungal disease and severe allergic rhinitis with mold allergies. Tr. at 307. She returned for a second visit on October 21, 2014. Tr. at 362–65. Dr. Woodworth treated the plaintiff for chronic sinusitis and referred her to the Alabama Asthma and Allergy Clinic. Tr. at 365. He further recommended that she receive allergy shots, but she declined because she said the side effects included death. Tr. at 56, 365 & 494. The doctor noted at that visit that she had returned after a "long abscence [sic]," and that she "had been doing well in her home and work environment with the changes banning perfumes, fragrant lotions, etc., from the work area." Tr. at 366. He further recited the plaintiff's complaint that, after a layoff, she returned to work "with different surroundings which are again causing inflammation with congestion, drainage, and headache." Tr. at 369. He recommended that she "have a space free from perfumes

and odors and [be] allowed to use [an] air purifier." Tr. at 369. Dr. Woodworth provided a letter dated October 2, 2014[3] stating, "I respectfully request that she be allowed to have an air purifier and a humidifier with her in her workspace to alleviate her symptoms," and that she "be provided with a workspace in a contained area or office." Tr. at 604. In the two years after her alleged onset date, the plaintiff returned to Dr. Woodworth twice. On November 17, 2016, he noted that she "reports constantly having rhinorrhea and nasal congestion." Tr. at 584. He further noted that she was not receiving "IT"—a reference, it appears, to the allergy shots that had been recommended. She returned to Dr. Woodworth again on July 18, 2017. Tr. at 366–69. Dr. Woodworth noted that the plaintiff's sinus complaints continued. Tr. at 366–69. Dr. Woodworth's opinion in the October 2, 2014 letter appears to be consistent with his own treatment notes. The opinion is not inconsistent with the treatment notes from other doctors. It appears from the record, however, that the opinion letter (Tr. at 604) either was not considered by the ALJ or was given little or no weight.

The ALJ failed to articulate what, if any, weight she assigned to Dr. Woodworth's assessment. The ALJ failed to mention or note the opinion of Dr.

---

[3] The record does not establish whether the letter was actually written on October 2, 2014—19 days before the 2014 visit with Dr. Woodworth—or is misdated and was written in conjunction with the October 21, 2014 visit.

Woodworth, except that she asked the VE whether the need for an air purifier would preclude "other work." The VE stated that the need for an air purifier would preclude the other work that the plaintiff was able to perform, given her RFC. Moreover, the VE's opinion that the plaintiff could perform her past relevant work included all three of her past work positions, and was not limited to the loan clerk job at which she had been given an accommodation.

The Commissioner argues that the ALJ's failure to state the weight given to the opinion was harmless error because the plaintiff was able to perform her past job as a loan clerk as accommodated. However, the VE's statement is based on the RFC provided by the ALJ, and the RFC cannot be considered to be based on substantial evidence where the ALJ failed to explain the weight, if any, that was given to the opinion of the treating physician.[4]

The ALJ in this case failed to "state with particularity the weight given to different medical opinions and the reasons therefor" as required by *Winschel*, 631 F.3d at 1179. The Eleventh Circuit has determined that, "[i]n the absence of such a

---

[4] The Commissioner's argument also ignores any discrepancy in the record as to whether the employer effectively accommodated the plaintiff's need for the an purifier and humidifier within an enclosed office. The plaintiff did state that she was able to work when her employer gave her a separate office where she could have an air purifier and humidifier. However, she also told Dr. Woodworth that when she returned to that job after a layoff, she was assigned to "a new work area with different leaders," and that she was having "severe congestion again." Tr. at 366.

statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Accordingly, the ALJ's failure to articulate any weight given to the opinion letter from Dr. Woodworth stating that the plaintiff should work in an enclosed area with an air purifier and a humidifier constitutes reversible error, and the case is due to be remanded for proper consideration of the treating doctor's opinion.

## B.    Pain Standard

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain

14

and other symptoms if she articulates reasons for doing so. *Wilson v. Barnhart*, 284

F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Ruling 96-7p, 1996 WL 374186

(1996) ("[T]he adjudicator must carefully consider the individual's statements about

symptoms with the rest of the relevant evidence in the case record in reaching a

conclusion about the credibility of the individual's statements.").[5]   Although the

Eleventh Circuit does not require explicit findings as to credibility, "'the implication

must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67

F.3d at 1562).   "[P]articular phrases or formulations" do not have to be cited in an

ALJ's credibility determination, but it cannot be a "broad rejection" which is "not

enough to enable [the district court] to conclude that [the ALJ] considered her

medical condition as a whole." *Id*. (internal quotations omitted).

In this case, the ALJ specifically stated that plaintiff's chronic sinusitis and

migraine headaches were severe impairments.   She further asserted that she

considered the plaintiff's nonsevere impairments "singly and in combination" with

her severe impairments, and found they were not disabling.   The ALJ's decision that

---

[5] Social Security Ruling 96-7p has been superseded by Social Security Ruling 16-3p, 2016 WL 1237954 (2016), which took effect in March 2016.   The new regulation removes the term "credibility" from the policy, and clarifies that "subjective symptom evaluation is not an examination of an individual's character." SSR16-3p, 2016 WL 1119029 at *1.   The plaintiff does not argue that the newer regulation is at issue here, and a careful review of the ALJ's decision indicates that there was no "examination of . . . character" that played a role in the application of the pain standard.

the plaintiff was not disabled also was based upon a negative assessment of the plaintiff's credibility.

The ALJ, to support her finding that the plaintiff was not as limited as she claimed, first referenced the lack of medical records that "support the frequency and duration of the migraines." Tr. at 20. The ALJ further pointed to evidence that the plaintiff exhibited "poor effort" on a spirometry test and that her physical examination at the allergy clinic showed "no abnormalities." The ALJ concluded that "she simply alleges a greater degree of debilitation than what objective evidence can support." Tr. at 22. Additionally, the ALJ asserted that the plaintiff's pain allegations are unsupported by her own descriptions of her activities of daily living, including her statements that she cared for her infant daughter on a daily basis.

Having considered the ALJ's opinion and all of the evidence presented, the court finds that the ALJ's decision to discredit Ford's allegations of pain and limitations was based on substantial evidence and applied the correct legal standards. Accordingly, the matter is due to be affirmed as to this ground raised by the plaintiff.

### III. CONCLUSION

Upon review of the administrative record, and considering all of Ford's arguments, the court finds the Commissioner's decision is not supported by

substantial evidence. The decision is, therefore, due to be REVERSED and REMANDED for consideration of the opinion of the plaintiff's treating physician.

A final judgment will be entered separately.

DONE and ORDERED on July 19, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE